UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOSEPH TRAVERS, LAWRENCE McCARTY, RANDOLPH TRIM, EZEQUIAS MARTINS PAZ, JING WEI, ANDREW STONE, ABDELATI ENNAKORI, RACHID FAIZ, HANNAH MORRIS, MOISES JACKSON, KEVIN McDOWELL, and all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>JETBLUE AIRWAYS CORPORATION, and FLIGHT SERVICES AND SYSTEMS, INC.,<br><br>    Defendant. | CIVIL ACTION<br>NO. 08-10730-GAO |

## DEFENDANT'S RULE 56.1 STATEMENT

Pursuant to Local Rule 56.1, Defendant JetBue Airways Corporation ("JetBlue") respectfully submits the following Rule 56.1 statement of material facts of record as to which there is no issue to be tried, in support of its motion, pursuant to Fed. R. Civ. P. 56(b), for summary judgment against the sole extant claim pending against it in this action, to wit: Plaintiffs' federal Fair Labor Standards Act (29 U.S.C. §§ 201 et seq., hereafter, "FLSA") claim asserted as Count I of the Amended Complaint.

The relevant facts set forth below are as detailed in the accompanying declarations of Robert A. Maruster, dated June 26, 2008 ("June 26 Maruster Decl."); of Robert A. Maruster, dated October 10, 2008 ("October 10 Maruster Decl."); of Robert P. Weitzel, dated June 25, 2008 ("Weitzel Decl."); of Joanna Geraghty, Esq., dated September 3, 2009 ("Geraghty Decl."), and of Robert J. Burns, Esq., dated September 3, 2009 ("Burns Decl."), and in the transcript of

the deposition of JetBlue Airways Corporation, taken by Plaintiffs pursuant to Fed. R. Civ. P. 30(b)(6) on June 11, 2009 ("JetBlue Dep.").[1]

1. At certain of the airports it serves – including Logan Airport, where all of the Massachusetts Plaintiffs allege they worked (*see* Am. Compl. ¶¶ 4-13) – JetBlue provides its passengers the option of curbside baggage check-in service. *See* June 26 Maruster Decl. ¶ 4; October 10, 2008 Maruster Decl. ¶ 2. Passengers may, alternatively, check their baggage at counters inside the terminal buildings. *Id.*

2. Over the relevant period, from 10 % to 30% of JetBlue's passengers have elected to use curbside check-in at JetBlue terminals where it has been made available. JetBlue Dep. 25:1-5; 44:12-16; 75:7-10; 87:14-17; 108:2-9.

3. JetBlue does not consider curbside check-in a service that is "core" to the "JetBlue experience" of its passengers, does not require the check-in capacity that curbside check-in represents, and does not consider it a "business need" of JetBlue. *See* JetBlue Dep. 27:21-28:24; 31:23-32:6; 43:8-44:2; 153:5-7.

4. At all JetBlue terminals where curbside check-in has been made available, the service is provided by skycaps employed by outside contractors. *See* June 26 Maruster Decl. ¶ 4; October 10, 2008 Maruster Decl. ¶ 2.

5. Skycap services to JetBlue passengers departing from Logan Airport are, and at all times since at least June 2006 have been, provided by FSS. *See* June 26 Maruster Decl. ¶ 5.

6. While FSS's website indicates that it provides services to airlines at over fifteen airports nationwide (*see* Burns Decl. Exh. 6), FSS provides services to JetBlue only at Logan Airport. *See* October 10 Maruster Decl. ¶ 3.

---

[1] The June 26 Maruster Decl., the Weitzel Decl., and the October 10 Maruster Decl.. are annexed as Exhibits 1, 2, and 3, respectively, to the Burns Decl. Relevant excerpts of JetBlue's 30(b)(6) designee are attached as Exh. 7 to the Burns Decl.

7. The service relationship between JetBlue and FSS has, for the bulk of the relevant period, been governed by a General Terms Agreement for Services, effective from June 24, 2006 (the "2006 FSS Contract"). *See* Geraghty Decl. Exh. 1; *see also* June 26 Maruster Decl. ¶ 6.

8. JetBlue and FSS recently entered into a new General Terms Agreement for Services, effective from February 7, 2009 (the "2009 FSS Contract"). *See* Geraghty Decl. Exh. 2.

9. The 2006 FSS Contract and the 2009 FSS Contract are "blended" contracts whereby FSS agrees to provide to JetBlue, and JetBlue agrees to purchase from FSS, certain "Services" as defined therein. *See* 2006 FSS Contract § 3.1; 2009 FSS Contract § 3.1; JetBlue Dep. 29:3-10; 76:13-77:7; 168:22-169:6.

10. The contracted-for "Services" provided by FSS at Logan Airport include "SkyCap Services: Curb side baggage checking service for JetBlue customers," as well as wheelchair services, baggage transfer services, and document verification services. *See* 2006 FSS Contract Appx. A; 2009 FSS Contract Appx. A.

11. FSS is compensated for the Services it provides to JetBlue on a "man hour" basis, calculated based upon contractual rates per "worker type." 2006 FSS Contract § 4.2; 2009 FSS Contract § 4.2.

12. FSS's charges for Services rendered are subject to offset for rent payments due from FSS to JetBlue for FSS's use of office space at JetBlue's Logan Airport terminal. *See* 2006 FSS Contract § 4.2(f) and Art. 20; 2009 FSS Contract § 4.2(g) and Art. 20.

13. In the Contracts, FSS agrees to provide its Services to JetBlue "in accordance with approved JetBlue supplied data and instructions, JetBlue's General Procedures Manual,

standard FAA approved industry practices and FAA approved JetBlue requirements." 2006 FSS Contract § 3.2; 2009 FSS Contract § 3.2.

14. Per the Contracts, FSS bears responsibility for compliance with "all applicable federal, state and local (including airport) laws, executive orders, ordinances, rules, and regulations issued pursuant thereto, as are pertinent to [FSS's] Services," including but not limited to various specified safety, drug testing, and anti-discrimination laws and regulations, and for ensuring its employees' compliance therewith. *See* 2006 FSS Contract Art. 18; 2009 FSS Contract Art. 18.

15. FSS is responsible for ensuring that its employees perform the contracted-for Services "in a safe, professional and workmanlike manner by competent personnel under qualified supervision," and for providing its employees with "all necessary initial and recurrent training, including familiarization with JetBlue Policies." *See* 2006 FSS Contract §§ 18.2.5, 18.2.6; 2009 FSS Contract §§ 18.2.5, 18.2.6.

16. With respect to the issue of employment, the Contracts expressly provide as follows: "The relationship between JetBlue and [FSS] shall be that of independent contractor for all purposes, and in no event shall persons employed by either Party be held or construed to be employees of the other." 2006 FSS Contract § 21.5; 2009 FSS Contract § 21.5.

17. FSS has the sole power to hire, fire, and control the employment relationship with the Plaintiff skycaps, and JetBlue lacks any involvement in these internal FSS employment decisions. *See* June 26 Maruster Decl. ¶ 4, 7-8; October 10 Maruster Decl. ¶ 2, 4.; Weitzel Decl. ¶¶ 4-5.

18. Customer complaints made to JetBlue regarding specific FSS employees, or regarding skycap service generally, are forwarded to FSS for its handling as FSS deems appropriate. *See* JetBlue Dep. 134:1-135:3; 159:9-163:6.

19. JetBlue is not involved with, nor does it recommend, disciplinary action with respect to individual FSS employees. *See* JetBlue Dep. 134:1-135:3; 159:9-163:6; Weitzel Decl. ¶ 5.

20. FSS is solely responsible for compensating its skycaps for their work and for satisfying all employment-related tax, reporting, and wage obligations. *See* June 26 Maruster Decl. ¶ 8; October 10 Maruster Decl. ¶ 5; Weitzel Decl. ¶ 6.

21. JetBlue has no involvement in or oversight over the employee compensation practices of FSS, which is solely responsible for: paying wages and providing benefits to its skycaps; securing and maintaining workers' compensation insurance covering each of its skycaps; and issuing W2 and other tax statements relating to its skycaps. *See* June 26 Maruster Decl. ¶ 8; October 10 Maruster Decl. ¶ 5; Weitzel Decl. ¶ 6.

22. JetBlue does not dictate staffing decisions made by FSS as to how FSS will deploy its various employees serving JetBlue's terminal. *See* JetBlue Dep. 74:8-11; 76:21-77:1-7; 127:23-135:1; Weitzel Decl. ¶ 5; October 10 Maruster Decl. ¶ 4.

23. While JetBlue's contracts with its third-party service contractors are written to ensure ample availability of the desired services to meet projected demand (*see* 2006 FSS Contract p.22; 2009 FSS Contract Appx. A, ¶ 6), it is FSS's responsibility to determine staffing of individual skycap employees necessary to meet JetBlue's service expectations. JetBlue Dep. 74:8-11; 76:21-77:1-7; 127:23-135:1; Weitzel Decl. ¶ 5; October 10 Maruster Decl. ¶ 4.

24.  JetBlue supervision of FSS's services is retrospective in nature, and is handled at a business-to-business level. *See* JetBlue Dep. 134:1-7. In instances where JetBlue is made aware of negative issues with respect to its contractors' services, such issues will be conveyed to the contracting company as an "unacceptable service level from JetBlue's standpoint," and where appropriate, FSS will be asked to formulate and execute its own corrective action plan. *Id.* at 134:8-135:3. Such matters typically involve broad classes of service deficiencies, aggregated from a "broader feedback set" from JetBlue's customers and/or management. *Id.* at 162:14-163:2. JetBlue remains "hands-off" with respect to corrective action by its contracting companies, with its oversight remedy generally comprising termination of the contract if contractors cannot meet JetBlue's service expectations. *Id.*

25.  JetBlue has no involvement in, oversight over, or even knowledge of, what the skycaps employed by FSS are paid, or the manner in which they are paid by FSS. *See* October 10 Maruster Decl. ¶ 6; JetBlue Dep. 74:15-21; Weitzel Decl. ¶ 6.

26.  JetBlue pays FSS an agreed contractual rate for the services FSS provides, with no further involvement in, or knowledge of, how or what FSS pays its employees. *See* JetBlue Dep. 127:12-128:16; Weitzel Decl. ¶ 6.

27.  FSS is responsible for formulating and implementing its own wage policies for its skycaps, and for ensuring that such policies comport with applicable legal obligations. *See* October 10 Maruster Decl. ¶ 6; 2006 FSS Contract Art. 18; 2009 FSS Contract Art. 18; JetBlue Dep. 84:1-3; Weitzel Decl. ¶ 6.

28.  JetBlue does not conduct training of FSS's skycap employees, and FSS is solely responsible therefor. *See* 2006 FSS Contract § 18.2.6; 2009 FSS Contract § 18.2.6; JetBlue Dep. 147:6-9; Weitzel Decl. ¶ 5. Rather, JetBlue communicates its training expectations to FSS on a

"train the trainer" basis, and FSS is responsible for all training of its skycap employees. *See* JetBlue Dep. 146:20-148:24; 188:13-189:5; 2009 FSS Contract, Appx. A ¶ 5.

29. JetBlue has no involvement in or oversight over the manner in which the skycaps employed by FSS, and FSS itself, have collected, internally remitted, and internally accounted for the proceeds of the $2 per bag curbside check-in charge over the period in which it has been in effect. JetBlue periodically receives from FSS a record of the number of bags checked at curbside, and a periodic remittance in the amount of that number multiplied by $2 per bag. *See* October 10 Maruster Decl. ¶ 7. Any discrepancies between JetBlue's and FSS's records of the number of bags checked at curbside – and therefore the amount of charge owing from FSS – are resolved cooperatively between JetBlue and FSS on a business-to-business level that does not involve individual skycaps. *See* JetBlue Dep. 136:14-140:12.

30. In its Answer to Plaintiffs' Amended Complaint in this Action, FSS repeatedly admitted that it was the sole employer of Plaintiff skycaps, and repeatedly denied that JetBlue had any employment relationship with the Plaintiff skycaps. *See* Answer of FSS (Docket No. 55), ¶¶ 1, 4-13, 25 and 31-37.

31. In response to JetBlue's interrogatories seeking the factual basis for Plaintiffs' claims that they were employed (in whole or in part) by JetBlue, all of the Plaintiffs uniformly provided only the following statement: "Plaintiff responds that he is employed by JetBlue at Logan Airport in East Boston, Massachusetts." *See* Response to Interrogatory No. 4 (Burns Decl. Exh. 5). Further, in response to JetBlue's Rule 34 requests seeking documentary support for their "joint employment" allegations, Plaintiffs stated that "they do not have any non-privileged documents in their possession responsive to this request." *See* Response to Document Request No. 3 (Burns Decl. Exh. 4). Plaintiffs have never produced a privilege log, let alone a

privilege log indicating that any specific documents responsive to this request were being withheld on grounds of privilege. *See* Burns Decl. ¶ 7.

Respectfully submitted,

*/s/ C. M. Kelly*

Gordon P. Katz (BBO #261080)
Ralph T. Lepore, III (BBO #294420)
Michael T. Maroney (BBO #653476)
HOLLAND & KNIGHT LLP
10 St. James Avenue
Boston, MA 02116
(617) 523-2700

Christopher G. Kelly (admitted *pro hac vice*)
Robert J. Burns (BBO # 656479)
HOLLAND & KNIGHT LLP
195 Broadway
New York, NY 10007
(212) 513-3200

*Counsel for Defendant*
*JetBlue Airways Corporation*

Dated: September 4, 2009

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent those indicated as non-registered participants on September 4, 2009.

*/s/*

# 8813911_v1