UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOSEPH TRAVERS, LAWRENCE McCARTY, RANDOLPH TRIM, EZEQUIAS MARTINS PAZ, JING WEI, ANDREW STONE, ABDELATI ENNAKORI, RACHID FAIZ, HANNAH MORRIS, MOISES JACKSON, KEVIN McDOWELL, and all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>JETBLUE AIRWAYS CORPORATION, and FLIGHT SERVICES AND SYSTEMS, INC.,<br><br>    Defendants. | CIVIL ACTION<br>NO. 08-10730-GAO |

## **JETBLUE AIRWAYS CORPORATION'S RULE 56.1 STATEMENT**

Pursuant to Local Rule 56.1, Defendant JetBue Airways Corporation ("JetBlue") respectfully submits the following Rule 56.1 statement of material facts of record as to which there is no issue to be tried, in support of its renewed motion, pursuant to Fed. R. Civ. P. 56(b), for summary judgment against the sole extant claim pending against it in this action: Plaintiffs' federal Fair Labor Standards Act (29 U.S.C. §§ 201 et seq., hereafter, "FLSA") claim asserted as Count I of the Amended Complaint.

The facts relevant to this motion are as detailed in the accompanying declarations of Robert A. Maruster, dated June 26, 2008 ("June 26 Maruster Decl."); of Robert A. Maruster, dated October 10, 2008 ("October 10 Maruster Decl."); of Robert P. Weitzel, dated June 25, 2008 ("Weitzel Decl."); of Joanna Geraghty, Esq., dated September 3, 2009 ("Geraghty Decl."); and of Robert J. Burns, Esq., dated March 19, 2010 ("Burns Decl."); and in the transcripts of the deposition of JetBlue Airways Corporation, taken by Plaintiffs pursuant to Fed. R. Civ. P.

30(b)(6) ("JetBlue Dep."); the depositions of Plaintiffs Joseph Travers ("Travers Dep."), Jing Wei ("Wei Dep."), Andrew Stone ("Stone Dep."), and Randolph Trim ("Trim Dep."); and the depositions of FSS President Robert P. Weitzel ("Weitzel Dep.") and FSS's Logan Airport General Manager Rob Nichols ("Nichols Dep.").[1]

1. At certain of the airports it serves – including Logan Airport, where all of the Massachusetts Plaintiffs allege they worked (*see* Am. Compl. ¶¶ 4-13) – JetBlue provides its passengers the option of curbside baggage check-in service. *See* June 26 Maruster Decl. ¶ 4; October 10, 2008 Maruster Decl. ¶ 2. Passengers may, alternatively, check their baggage at counters inside the terminal buildings. *Id.*

2. Over the relevant period, from 10% to 30% of JetBlue's passengers have elected to use curbside check-in at JetBlue terminals where it has been made available. JetBlue Dep. 25:1-5; 44:12-16; 75:7-10; 87:14-17; 108:2-9.

3. JetBlue does not consider curbside check-in a service that is "core" to the "JetBlue experience" of its passengers, does not require the check-in capacity that curbside check-in represents, and does not consider it a "business need" of JetBlue. *See* JetBlue Dep. 27:21-28:24; 31:23-32:6; 43:8-44:2; 153:5-7.

4. At all JetBlue terminals where curbside check-in is available, the service is provided by skycaps employed by outside contractors. *See* June 26 Maruster Decl. ¶ 4; October 10, 2008 Maruster Decl. ¶ 2. Skycap services to JetBlue passengers departing from Logan Airport are, and since at least June 2006 have been, provided by FSS. *See* June 26 Maruster Decl. ¶ 5.

5. FSS provides outsourced aviation services – including, *inter alia*, skycap services, wheelchair services, baggage handing services, porter services, and aircraft cleaning services –

---

[1] The enumerated declarations, and relevant excerpts of the listed depositions, are annexed to the Burns Decl.

for 74 airlines at 34 airports across the country. *See* Weitzel Dep. 9:7-23; Nichols Dep. 20:20-24:1. FSS provides services to JetBlue only at Logan Airport. *See* October 10 Maruster Decl. ¶ 3.

6. FSS employs 50-75 skycaps nationwide, including approximately 20 skycaps serving various airlines' passengers at Logan Airport. *See* Weitzel Dep. 12:20-13:12). Overall, FSS employs 220 employees for the various services it provides to several airlines at Logan Airport, including approximately 40 who service FSS's JetBlue account as skycaps, wheelchair pushers, and baggage handlers. *See* Nichols 23:10-24:1; 29:23-30:14.

7. The service relationship between JetBlue and FSS has, for the bulk of the relevant period, been governed by a General Terms Agreement for Services, effective from June 24, 2006 (the "2006 FSS Contract"). *See* Geraghty Decl. Exh. 1; *see also* June 26 Maruster Decl. ¶ 6.

8. JetBlue and FSS more recently entered into a new General Terms Agreement for Services, effective from February 7, 2009 (the "2009 FSS Contract"). *See* Geraghty Decl. Exh. 2.

9. The 2006 FSS Contract and the 2009 FSS Contract are "blended" contracts whereby FSS agrees to provide to JetBlue, and JetBlue agrees to purchase from FSS, certain "Services" as defined therein. *See* 2006 FSS Contract § 3.1; 2009 FSS Contract § 3.1; JetBlue Dep. 29:3-10; 76:13-77:7; 168:22-169:6.

10. The contracted-for "Services" provided by FSS at Logan Airport include "SkyCap Services: Curb side baggage checking service for JetBlue customers," as well as wheelchair services, baggage transfer services, and document verification services. *See* 2006 FSS Contract Appx. A; 2009 FSS Contract Appx. A.

11. FSS is compensated for the Services it provides to JetBlue on a "man hour" basis, calculated based upon contractual rates per "worker type." 2006 FSS Contract § 4.2; 2009 FSS Contract § 4.2.

12. FSS's charges for Services rendered are subject to offset for rent payments due from FSS to JetBlue for FSS's use of office space at JetBlue's Logan Airport terminal. *See* 2006 FSS Contract § 4.2(f) and Art. 20; 2009 FSS Contract § 4.2(g) and Art. 20.

13. In the Contracts, FSS agrees to provide its Services to JetBlue "in accordance with approved JetBlue supplied data and instructions, JetBlue's General Procedures Manual, standard FAA approved industry practices and FAA approved JetBlue requirements." 2006 FSS Contract § 3.2; 2009 FSS Contract § 3.2.

14. Per the Contracts, FSS bears responsibility for compliance with "all applicable federal, state and local (including airport) laws, executive orders, ordinances, rules, and regulations issued pursuant thereto, as are pertinent to [FSS's] Services," including but not limited to various specified safety, drug testing, and anti-discrimination laws and regulations, and for ensuring its employees' compliance therewith. *See* 2006 FSS Contract Art. 18; 2009 FSS Contract Art. 18.

15. FSS is responsible for ensuring that its employees perform the contracted-for Services "in a safe, professional and workmanlike manner by competent personnel under qualified supervision," and for providing its employees with "all necessary initial and recurrent training, including familiarization with JetBlue Policies." *See* 2006 FSS Contract §§ 18.2.5, 18.2.6; 2009 FSS Contract §§ 18.2.5, 18.2.6.

16. With respect to the issue of employment, the Contracts expressly provide as follows: "The relationship between JetBlue and [FSS] shall be that of independent contractor for

4

all purposes, and in no event shall persons employed by either Party be held or construed to be employees of the other." 2006 FSS Contract § 21.5; 2009 FSS Contract § 21.5.

17. FSS has the sole power to hire, fire, and control the employment relationship with the Plaintiff skycaps, and JetBlue lacks any involvement in these internal FSS decisions. *See* June 26 Maruster Decl. ¶ 8; October 10 Maruster Decl. ¶ 4; Weitzel Decl. ¶¶ 4-5.

18. JetBlue had no involvement in the hiring of any of the Plaintiff skycaps, which was conducted exclusively by FSS personnel. *See* Nichols Dep. 172:10-16; Trim Dep. 54:16-55:6. In fact, there has been no hiring or firing of FSS skycaps serving the JetBlue account during the pendency of the JetBlue curbside charge, as the crew of 10 such skycaps (i.e., the 10 named Plaintiffs in this case) has remained consistent throughout that period, with the exception of one skycap departure for medical reasons. *See* Nichols Dep. 152:2-155:23, 151:19-155:23; Stone Dep. 77:1-10.

19. FSS has an established internal supervisory hierarchy for its skycaps at Logan Airport: skycaps are supervised by one of several FSS duty managers, who are supervised by the FSS passenger service manager, who in turn is supervised by the FSS general manager for Logan Airport, Rob Nichols. *See* Weitzel Dep. 14:8-16:4; Travers Dep. 25:22-26:10. Nichols testified that there are no JetBlue employees who regularly come to the curb to supervise the skycaps. *See* Nichols Dep. 143:18-145:23.

20. Local operational coordination between JetBlue and FSS is handled at a business-to-business level among members of station leadership. FSS's general manager is, among other things, responsible for communicating about operational issues with JetBlue's Logan Airport leadership at daily briefing sessions held with representatives of JetBlue internal operations and JetBlue's various vendors. *See* Weitzel Dep. 10:12-11:1; 17:12-19:7; Nichols Dep. 58:4-60:13.

5

21.     Skycaps with issues or problems go to FSS supervisors, not to JetBlue personnel. *See* Trim Dep. 46:4-6, 53:24-54:4; Stone Dep. 10:15-23; 65:5-8. Any direct operational contact with JetBlue personnel is of the sort intended to promptly fix incipient errors (for example, when a skycap has checked-in passengers or bags incorrectly) and minimize disruption to passengers. *See* Travers Dep. 40:18-41:6; Wei Dep. 18:4-19:16.

22.     FSS is responsible for "everyday disciplinary action" for the skycaps. *See* Travers Dep. 43:13-19. Customer complaints made to JetBlue regarding specific FSS employees, or regarding skycap service generally, are forwarded to FSS for its handling as FSS deems appropriate. *See* JetBlue Dep. 134:1-135:3; 159:9-163:6.

23.     On an operational level, if JetBlue has an issue with the conduct of one of FSS's skycaps or other employees, JetBlue will communicate the issue at a business-to-business level to FSS General Manager Rob Nichols. *See* Nichols Dep. 146:6-148:10. Nichols has never been asked to inform JetBlue of the steps taken by FSS in response to any such issues, JetBlue has never requested that it be involved in any ensuing discipline, and JetBlue has never sought disciplinary records of FSS's employees. *Id.*; *see also* Nichols Dep. 49:2-52:3.

24.     Of the ten FSS skycaps who have worked the JetBlue Boston curb during the relevant period, not a single one has been fired at JetBlue's request, transferred to other FSS operations at JetBlue's request, or suspended at JetBlue's request. *See* Nichols Dep. 152:2-155:23; 173:4-14; Trim Dep. 62:4-12.

25.     There are specific indications in the record of only four incidents, over the entire relevant period in which the JetBlue curbside charge has been in effect, where JetBlue might be said to have been involved in any way in discipline of FSS employees. Two such alleged incidents involved FSS-employed wheelchair-pushers. *See* Nichols Dep. 148:22-150:2, 150:3-151:18; 172:17-173:3. Of the two allegedly involving skycap employees, each such instance

6

went centrally to issues of safety and security. Plaintiff Stone was temporarily suspended by FSS after three security-related incidents of allowing unauthorized persons to join him in security areas – only one of which was allegedly observed and reported to FSS by JetBlue personnel. *See* Nichols Dep. 153:20-154:16; Stone Dep. 68:3-69:18. And Plaintiff Wei was allegedly "written up" by a JetBlue manager on one instance for a critical safety-related infraction: allowing a passenger to check a chainsaw reeking of gasoline. *See* Travers Dep. 42:1-43:12.

26. FSS is solely responsible for compensating its skycaps for their work and for satisfying all employment-related tax, reporting, and wage obligations. JetBlue has no involvement in or oversight over the employee compensation practices of FSS, which is solely responsible for: paying wages and providing benefits to its skycaps; securing and maintaining workers' compensation insurance covering each of its skycaps; and issuing W2 and other tax statements relating to its skycaps. *See* June 26 Maruster Decl. ¶ 8; October 10 Maruster Decl. ¶

27. FSS has the sole authority to schedule skycap shifts and leave. Weitzel Decl. ¶ 5. JetBlue does not dictate staffing decisions made by FSS as to how FSS will deploy its various employees serving JetBlue's terminal. *See* JetBlue Dep. 74:8-11; 76:21-77:1; 127:23-135:1; Stone Dep. 71:20-72:4, 75:4-11; Travers Dep. 27:10-13. As a practical matter, scheduling of skycap coverage and shifts has not changed over time. The same FSS skycaps have been working the at JetBlue curb throughout the relevant period, and with the exception of vacation coverage and time off, all have had a consistent work schedule throughout. *See* Stone Dep. 74:20-75; Nichols Dep. 56:6-57:16, 60:14-20. Therefore, operationally and practically, JetBlue has no involvement with skycap staffing levels or assignments. *See* Nichols Dep. 56:6-57:16, 60:14-20.

28.     JetBlue has no involvement in, oversight over, or even knowledge of, what the skycaps employed by FSS are paid, or the manner in which they are paid by FSS. *See* October 10 Maruster Decl. ¶ 6; JetBlue Dep. 74:15-21; Weitzel Decl. ¶ 6. JetBlue merely pays FSS an agreed contractual rate for the services FSS provides, with no further involvement in, or knowledge of, how or what FSS pays its employees. *See* JetBlue Dep. 127:12-19. FSS is responsible for formulating and implementing its own wage policies for its skycaps, and for ensuring that such policies comport with applicable legal obligations. *See* October 10 Maruster Decl. ¶ 6; *see also* 2006 FSS Contract Art. 18; 2009 FSS Contract Art. 18 (FSS responsibility to ensure compliance with all applicable laws and regulations); JetBlue Dep. 84:1-3; Weitzel Decl. ¶ 6.

29.     JetBlue policies regarding such matters as fee collection, oversized baggage, and compliance with government requirements are communicated to FSS management, which then disseminates the information to their skycaps and other operating employees as FSS deems appropriate. *See* Nichols Dep. 47:13-48:23.

30.     JetBlue does not conduct training of FSS's skycap employees, and FSS is solely responsible therefor. *See* 2006 FSS Contract § 18.2.6; 2009 FSS Contract § 18.2.6; JetBlue Dep. 147:6-9. Rather, JetBlue communicates its training expectations to FSS on a "train the trainer" basis, and FSS is responsible for all training of its skycap employees. *See* JetBlue Dep. 146:20-148:24; 188:13-189:5; *see also* 2009 FSS Contract, Appx. A ¶ 5; Nichols Dep. 42:1-45:12; 140:4-141:22; Trim Dep. 61:9-62:3; Travers Dep. 54:2-55:1.

31.     JetBlue has no involvement in or oversight over the manner in which the skycaps employed by FSS, and FSS itself, have collected, internally remitted, and internally accounted for the proceeds of the $2 per bag curbside check-in charge over the period in which it has been in effect. *See* Nichols Dep. 64:8-65:14; 119:2-124:1; 129:24-131:3; 134:2-135:10; 136:20-

139:16; Trim Dep. 60:11-8; Stone Dep. 73:18-74:19. JetBlue periodically receives from FSS a record of the number of bags checked at curbside, and a periodic remittance in the amount of that number multiplied by $2 per bag. *See* October 10 Maruster Decl. ¶ 7. Any discrepancies between JetBlue's and FSS's records of the number of bags checked at curbside – and therefore the amount of charge owing from FSS – are resolved cooperatively between JetBlue and FSS on a business-to-business level that does not involve individual skycaps. *See* JetBlue Dep. 136:14-140:12.

32. While performing skycap duties, Plaintiffs wear uniforms exclusively bearing the FSS logo. Nothing on the uniforms identifies them as affiliated with JetBlue. *See* Trim Dep. 58:7-59:4; Stone Dep. 70:10-71:8); Nichols Dep. 162:5-163:12.

Respectfully submitted,

/s/ Gordon P. Katz

Gordon P. Katz (BBO #261080)
Ralph T. Lepore, III (BBO #294420)
Michael T. Maroney (BBO #653476)
HOLLAND & KNIGHT LLP
10 St. James Avenue
Boston, MA 02116
(617) 523-2700

Christopher G. Kelly (admitted *pro hac vice*)
Robert J. Burns (BBO # 656479)
HOLLAND & KNIGHT LLP
195 Broadway
New York, NY 10007
(212) 513-3200

*Counsel for Defendant*
*JetBlue Airways Corporation*

Dated: March 19, 2010

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent those indicated as non-registered participants on March 19, 2010.

_____

# 9277674_v1